IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD SHAFFER,                )
                               )
          Plaintiff,           )
                               )
     v.                        )   Civil Action No. 13-925
                               )
CAROLYN W. COLVIN,             )
ACTING COMMISSIONER OF         )
SOCIAL SECURITY,               )
                               )
          Defendant.           )

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 30th day of September, 2014, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending application for benefits on March 25, 2011, alleging a disability onset date of November 29, 2010, (subsequently amended to March 31, 2011), due to tinnitus and knee arthritis.[1] Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on March 9, 2012, at which plaintiff, represented by counsel, appeared and testified. On May 16, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On May 30, 2013, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 62 years old at the time of the ALJ's decision and is classified as a person of advanced age under the regulations. 20 C.F.R. §404.1563(e). Plaintiff has a high school education and past relevant work experience as a diesel mechanic and labor union staff representative, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of bilateral knee arthritis with bilateral knee replacement, those impairments, alone or in combination with his non-severe impairments,[2] do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform sedentary work but is limited to occasional postural maneuvers, such as balancing, stooping,

---

[1] The ALJ found that plaintiff meets the insured status requirements of the act through December 31, 2015.

[2] The ALJ found that plaintiff's other reported impairments of hearing loss, tinnitus, migraine headaches, high cholesterol, hiatal hernia and stress are non-severe because they do not have more than a de minimus effect on plaintiff's ability to perform basic work activities. (R. 14-16).

kneeling, crouching, crawling and climbing ramps and stairs, and must avoid climbing ladders, ropes and scaffolds. (R. 16). Based on the vocational expert's description of plaintiff's past relevant work of labor union staff representative, as well as the description of that position set forth in the Dictionary of Occupational Titles, the ALJ found that plaintiff is capable of performing his past relevant work, and therefore concluded that he is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[3] 20 C.F.R. §404.1520(a)(4). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003). As already noted, in this case the ALJ found plaintiff to be not disabled at step 4 of the sequential evaluation process.

---

[3] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520(a)(4); Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §404.1520a.

Here, plaintiff essentially raises three challenges to the ALJ's determination of not disabled: (1) the ALJ failed to present a hypothetical question to the vocational expert inquiring as to whether plaintiff can perform his past relevant work in light of the postural limitations found by the ALJ in his residual functional capacity finding; (2) the ALJ failed to consider the effect of all of plaintiff's impairments, both severe and not severe, in assessing plaintiff's residual functional capacity; and, (3) the ALJ failed to consider plaintiff's long work history in assessing plaintiff's credibility. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that in determining that plaintiff can perform his past relevant work the ALJ violated both SSR 96-9p and the decision of the United States Court of Appeals for the Third Circuit in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), by not asking the vocational expert a hypothetical question incorporating the non-exertional limitations found by the ALJ in his residual functional capacity finding. The government counters by arguing that SSR 96-9p and Sykes apply only at step 5 of the sequential evaluation process and that the ALJ was not required to ask a hypothetical question to the vocational expert in this case because the ALJ found plaintiff not disabled at step 4. Upon due consideration of the parties' briefs and the relevant law, the court agrees with the government that the ALJ is not <u>required</u> to ask a hypothetical at step 4, and further finds that the ALJ's step 4 finding that plaintiff can perform his past relevant work is supported by substantial evidence.

At step 4 of the sequential evaluation process, the ALJ is required to consider whether the claimant retains the residual functional capacity[4] to perform his past relevant work. 20 C.F.R. §404.1520(e). If the claimant cannot perform his past relevant work, the ALJ proceeds to step 5, where the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §404.1520(f).

In this case, the ALJ found that plaintiff retains the residual functional capacity to perform sedentary work with, *inter alia*, occasional postural maneuvers. (R. 16). The ALJ then found at step 4 that plaintiff is capable of performing his past relevant work as a labor union staff representative because that work "does not require the performance of work-related activities precluded by [his] residual functional capacity finding." (R. 19). In making this finding the ALJ relied on testimony from the vocational expert regarding the physical and mental demands of plaintiff's job as a labor union staff representative and the description of that job in the Dictionary of Occupational Titles. (R. 19).

Plaintiff argues, however, that the ALJ was not permitted to make the determination at step 4 that plaintiff can perform his past relevant work without explicitly asking the vocational expert a hypothetical question incorporating a limitation to occasional postural maneuvers as found in the ALJ's residual functional capacity finding. In support, plaintiff relies on Sykes

---

[4] Residual functional capacity finding is defined as the most an individual still can do in a work setting despite the limitations caused by her impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); 20 C.F.R. §404.1545(a); SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §404.1545(a)(3)-(4); SSR 96-8p. The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

and SSR 96-9p. However, the government is correct that plaintiff's reliance on <u>Sykes</u> and SSR 96-9p is misplaced, as both apply at step 5 of the sequential evaluation process.

In <u>Sykes</u>, the Third Circuit Court of Appeals held that in cases where both exertional and non-exertional impairments are present, the Commissioner cannot meet her *step 5* burden of showing that the claimant can perform other work in the national economy by relying exclusively on the medical-vocational guidelines "without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion)." <u>Sykes</u>, 228 F.3d at 261. Similarly, SSR 96-9p, by its very terms is intended to explain the Commissioner's "policies regarding the impact of a residual functional capacity (RFC) assessment for less than the full range of sedentary work on an individual's ability <u>to do other work</u>." (emphasis added). Moreover, every case from this district that plaintiff cited for the proposition that the ALJ <u>must</u> ask a hypothetical question when there are non-exertional impairments involved a finding of not disabled at step 5. *See* <u>Mistick v. Colvin</u>, 2013 WL 5288261 (W.D.Pa., Sept. 18, 2013)(J. Bissoon); <u>Kobulnicky v. Astrue</u>, 2013 WL 1290955 (W.D.Pa., March 27, 2013)(J. Bloch); <u>Gority v. Astrue</u>, 2011 WL 1225708 (W.D.Pa., March 29, 2011) (J. Bloch); <u>Guyer v. Astrue</u>, 2009 WL 482245 (W.D.Pa., Feb. 25, 2009) (J.Lancaster).

Plaintiff's insistence that the ALJ is required to ask a hypothetical to the vocational expert where there are non-exertional limitations present, regardless of whether the ALJ is making a step 4 or step 5 determination, is not correct. Under the regulations, in determining whether a claimant can do his past relevant work, "a vocational expert ... *may* offer expert opinion testimony in response to a hypothetical question about whether a person with the

physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally preformed in the national economy." 20 C.F.R. §404.1546(b)(2); *see also* Diaz v. Commissioner of Social Security, 440 Fed. Appx. 70, 72 (3d Cir. 2011)("[a]lthough vocational expert testimony is *not required, it may* be used" in making the determination whether plaintiff can perform past relevant work).

The court is satisfied that the ALJ committed no error by making a determination of not disabled at step 4 without asking the vocational expert a specific hypothetical as to whether plaintiff can perform his past relevant work. Moreover, the ALJ adhered to the appropriate standards in making that determination.

At step 4, the determination of whether a claimant's residual functional capacity enables him to perform his past relevant work involves three sub-steps: (1) specific findings of fact as to the claimant's residual functional capacity; (2) findings regarding the physical and mental demands of the claimant's past relevant work; and, (3) a comparison of the residual functional capacity to the past relevant work. Burnett v. C'mr of Social Security, 220 F.3d 112, 120 (3d Cir. 2000). SSR 82-62 sets forth the evidence which should be considered in making that determination and provides that the claimant is the "primary source" for vocational documentation.

Here, as previously noted, the ALJ relied on the testimony of the vocational expert and the description of plaintiff's past relevant work in the DOT in determining the physical demands of plaintiff's past relevant work as a labor union staff representative and determined that it "did not require the performance of work activities precluded by his medically determinable impairments." (R. 19). There is nothing in the description of that job provided

by the vocational expert or in the DOT that would suggest that plaintiff could not perform that job if he was limited to only occasional postural maneuvers. More importantly, in a work history report that he himself completed, plaintiff did not indicate that his position required any climbing, stooping, kneeling, crouching, or crawling, (R. 178), and he indicated in both that same report and at the hearing that the only physical aspect to his job was driving. (R. 36).

Upon review, the court is satisfied that the ALJ complied with the appropriate standards in rendering his step 4 finding and that his conclusion that plaintiff can perform his past relevant work of labor union staff representative is supported by substantial evidence.

Plaintiff's second argument is that the ALJ failed to consider the combined effects of all of plaintiff's medical conditions, both severe and not severe, in assessing plaintiff's residual functional capacity finding. Specifically, he argues that the ALJ failed to account for plaintiff's "mild" limitations in concentration, persistence or pace arising from plaintiff's not severe mental impairment.[5] This argument is without merit.

Pursuant to SSR 96-8p, in assessing residual functional capacity, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are 'not severe.'" The ruling recognizes that "in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment ... may narrow the range of other work that the individual may still be able to do." Id. .

---

[5] At step 2 of the sequential evaluation process, the ALJ considered plaintiff's alleged impairment of "stress and anxiety" under the standards set forth in 20 C.F.R. §404.1520a. The ALJ rated plaintiff's degree of limitation in the four functional areas and found plaintiff to have no restrictions in activities of daily living, no limitations in social functioning, mild limitations in concentration, persistence or pace, and no episodes of decompensation. Because plaintiff's limitations were none or mild in all four areas, the ALJ properly concluded that plaintiff does not have a severe mental impairment. 20 C.F.R. §404.1520a(d)(1). Plaintiff does not challenge this finding.

Here, the ALJ found that plaintiff retains the residual functional capacity to perform sedentary work with postural limitations accounting for plaintiff's severe knee impairment. (R. 16). It is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence. (R. 16-18).

Conversely, the record does not support any additional limitations stemming from plaintiff's "mild" difficulties in concentration, persistence or pace. The ALJ noted in his decision that plaintiff had reported to Dr. Clark, the consultative psychologist, that he had no history of depression or severe anxiety, no history of mental health treatment, no current feelings of depression or anxiety, and that he had not experienced any episodes of depression in the past or any episodes of anxiety in the past six months. (R. 15; 12-319). Significantly, Dr. Clark expressly reported that his "evaluation of cognitive processes indicated that [plaintiff's] concentration skills are normal." (R. 314).[6]

Although plaintiff now contends that the ALJ should have accounted for plaintiff's "mild" difficulties in concentration, persistence or pace, in the residual functional capacity finding, he does not offer any specific additional limitation that the ALJ should have included. While suggesting that his "mild" difficulties in concentration, persistence or pace possibly could limit him to simple, routine tasks or to unskilled work, case law in this circuit makes

---

[6] Although Dr. Clark assessed plaintiff as having moderate limitations in carrying out short, simple instructions and extreme limitations in carrying out detailed instructions and making judgments on simple work-related decisions, (R. 316), the ALJ expressly addressed and rejected this assessment as not being consistent with Dr. Clark's own objective findings, including that plaintiff's concentration skills are normal, that his judgment with regard to decisions affecting his well-being is good, as evidenced by his ability to maintain a job for years, and his assignment of a Global Assessment of Functioning score of 65, indicative of only mild symptoms. (R. 15). Plaintiff has not challenged the ALJ's evaluation of Dr. Clark's report.

clear that a restriction limiting an individual, *e.g.*, to "simple, routine tasks" or "unskilled work," is sufficient to accommodate <u>moderate</u> limitations in concentration, persistence and pace. See, e.g., <u>Parks v. Commissioner of Social Security</u>, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010)( RFC limiting claimant to performing simple, unskilled work adequate to account for *moderate* limitations in concentration, persistence and pace); <u>McDonald v. Astrue</u>, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(RFC limiting claimant to "simple, routine tasks" adequate to accommodate *moderate* limitations in concentration, persistence and pace); <u>Menkes v. Astrue</u>, 262 Fed.Appx. 410, 412-13 (3d Cir. 2008)(no error in RFC restricting claimant to "simple routine tasks" to account for *moderate* limitations in concentration, persistence and pace); <u>Douglas v. Astrue</u>, 2011 WL 482501 (E.D. Pa., Feb. 4, 2011)(RFC limiting claimant to unskilled work adequately accounted for *moderate* limitations in concentration, persistence or pace). Plaintiff cites no authority from this circuit suggesting that someone with merely "mild" difficulties in concentration, persistence or pace should be limited to unskilled work or simple, routine tasks.

Upon review, the court is satisfied that the ALJ's residual functional capacity finding reasonably accommodates all of the limitations supported by the medical and other evidence of record as outlined in the decision, and that the ALJ did not error in not including any additional limitations arising from plaintiff's not severe mental impairment which are not supported by the record.

Plaintiff's final argument is that the ALJ's credibility determination is flawed because he failed to consider plaintiff's long work history. This argument is unpersuasive. Plaintiff is correct that the testimony of a claimant with a long, productive work history is to be given substantial credibility concerning his work-related limitations, that is so *only* when those

limitations are supported by competent medical evidence. See Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979). And although a claimant's work history is one of many factors the ALJ is to consider in assessing an individual's subjective complaints, 20 C.F.R. §404.1529(c)(3), the ALJ is not required to equate a long work history with credibility. See Christl v. Astrue, 2008 WL 4425817, *12 (W.D.Pa. Sept. 30, 2008).

Thus, a claimant's work history alone is not dispositive of credibility. Here, plaintiff testified about his lengthy work history as a diesel mechanic and labor union staff representative at the hearing, (R. 33-38), and the ALJ referred to it when he determined that plaintiff could perform his past relevant work. (R. 19). However, in assessing plaintiff's credibility the ALJ considered the record as a whole, and, based on his review of all of the evidence, including the medical evidence and plaintiff's activities of daily living, he reasonably concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (R. 17-18). Accordingly, plaintiff's work history in and of itself is insufficient to overcome the substantial evidence refuting plaintiff's allegations of debilitating limitations.

The court is satisfied that the ALJ properly evaluated plaintiff's allegations regarding his pain and limitations in accordance with the regulations. 20 C.F.R. §§404.1529(c); see also SSR 96-7p.[7] It also is important to emphasize that the ALJ did not find plaintiff's subjective complaints entirely not credible. Rather, the decision makes clear that, to the extent plaintiff's allegations as to the limitations arising from his impairments are supported by the medical and other evidence, the ALJ accommodated those limitations in the residual functional capacity

---

[7] Allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. §404.1529(c), and an ALJ may reject a claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); see also SSR 96-7p.

finding. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

The record demonstrates that the ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its own credibility determination. Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence and is satisfied that it is.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Robert W. Gillikin II, Esq.
Rutter Mills, LLP
160 W. Brambleton Ave.
Norfolk, VA 23510

Michael Colville
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)